### APPEAL OF ALEXANDRIA PAPER CO.

Docket No. 2271. Submitted May 22, 1925. Decided December 23, 1925.

> *Held* that, in computing invested capital, earned surplus should be reduced by the depreciation sustained.

*George S. Olive*, *C. P. A.*, and *Frank C. Olive*, *Esq.*, for the taxpayer.

*Arthur J. Seaton*, *Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, GREEN, and LOVE.

The Commissioner has asserted a deficiency in income and profits taxes for the year 1917 in the sum of $12,539.44. The taxpayer admits the correctness of a part of the determination and there is here in controversy only $6,879.92. So much of the deficiency as is in controversy grows out of the refusal of the Commissioner to allow for 1917 the amount of depreciation claimed by the taxpayer and

the reduction by him of the invested capital of the corporation as of January 1, 1917, by the amount of $84,875.95, which amount is the excess of the depreciation theretofore claimed by and allowed to the taxpayer over the depreciation set up on its books.

### FINDINGS OF FACT.

The taxpayer is an Indiana corporation engaged in the manufacture of newsprint paper at Alexandria. For the years 1909 to 1916, inclusive, it claimed on its tax returns, and was allowed as depreciation, a total of $122,468.72, of which amount it set up on its books, as the depreciation claimed and taken for the years 1914, 1915, and 1916, the sum of $37,592.83. No depreciation or similar account was kept prior to 1914. The Commissioner computed the 1917 depreciation on the basis of the values shown on the taxpayer's books.

### OPINION.

GREEN: As to the first of the questions in this appeal—namely, the amount of depreciation which the taxpayer should be permitted to deduct in the computation of its net income for the year 1917— the record is in a state of hopeless confusion. The secretary and treasurer of the company appeared before the Board as a witness and testified that he had charge of the books of the company; that he was familiar generally with the machinery and plant assets of the company; that he paid the bills for equipment, machinery, and tools purchased; that he was familiar with the values of such assets from his examination of catalogues and conversation with salesmen and the representatives of other companies; that an appraisal had been made September 29, 1915, and that the appraisers determined the reproduction cost of all the plant assets to be $282,-777.74; that by the same appraisal the sound value of such assets as of that date was determined to be $235,790.25, and that the sound values as of that date properly reflect the sound values of the plant assets at March 1, 1913. On cross-examination he stated that $235,000 represented the estimated selling value on March 1, 1913.

The taxpayer then introduced in evidence a table, of which the following is a summary:

| | Sound value per appraisal of Sept. 29, 1915, considered fair value Mar. 1, 1913. | Additions, Sept. 29, 1915, through Dec. 31, 1916. | Total, Dec. 31, 1916. | Rate. | Depreciation. |
|---|---|---|---|---|---|
| Total | $256,790.25 | $12,024.50 | $268,814.75 | | $18,297.78 |

The witness then identified the ledger of the company and his counsel offered in evidence copies of two pages thereof, the same being the improvement account for the years 1913 and 1914. Shortly thereafter the same witness testified that there were no additions to the plant asset account for the years 1913, 1914, and 1915.

A statement of the depreciable assets as shown by the books of the company was then admitted in evidence and it showed a total of $204,521.34 at January 31, 1913, and $216,545.84 at December 31, 1916.

In the taxpayer's brief appears the following paragraph:

Beginning with the year 1914, the taxpayer took the advice of accountants and started keeping a depreciation reserve. At January 1, 1917, the books showed the cost of its assets which had been charged to plant accounts as $209,045.94, with a depreciation reserve of $37,592.83, making a net value thereof of only $171,453.01. This amount, the taxpayer contends, is much less than the cost of the plant assets properly depreciated. It contends that the fair values as of March 1, 1913, as determined by the computation based upon the summary of sound values made by Coats and Burchard, plus the cost of subsequent additions, should be used instead of the value as shown by its books. Said fair value as of March 1, 1913, was $235,790.25, and the cost of said additions was $11,524.50, making the total, as of January 1, 1917, $247,314.75.

We regard the appraisal admitted in evidence as of little value, not only because it fixes the value of the assets at a time when such value is not in controversy, but because the persons who made the appraisal were not before the Board to subject themselves to cross examination thereon. The witness, using this appraisal as a basis, testified that the value of the assets on March 1, 1913, was the same as their value on September 29, 1915. Evidence as to the improvements made subsequent to March 1, 1913, was offered without regard to the fact that these improvements were included in the list of assets appraised and used as a basis for the March 1, 1913, value. The Commissioner and the taxpayer are far from being in accord as to the additions to the plant and equipment subsequent to March 1, 1913. The Commissioner offered no evidence as to the value of the depreciable assets at any time. In view of the conflicting statements offered by the taxpayer, we must approve the determination of the Commissioner as to this point.

The taxpayer contends that its invested capital should be reduced only by the amount of its depreciation reserve as the same appears on its books and which contains only the depreciation claimed by it and allowed by the Commissioner for the years 1914, 1915, and 1916. For the years prior to 1914 no depreciation account was set up on its books. It contends that the depreciation claimed by it on its tax returns and allowed by the Commissioner in the years 1909 to 1913, inclusive, can not be added to its depreciation reserve. The taxpayer does not contend that the amount of depreciation which it claimed and which was allowed to it by the Commissioner was in any year incorrect, and we therefore assume that it actually sustained in all years the amount of depreciation which the Commissioner allowed.

Where it exists, earned surplus is included in and becomes part of the invested capital of a corporation. Earned surplus can not be accurately determined without due allowance for depreciation. It follows logically that, to the extent that this corporation had an earned surplus on December 31, 1917, such earned surplus, before being added to the other elements of invested capital, should be reduced by any depreciation sustained by the corporation and not already deducted in computing the earned surplus. No other element of invested capital may be reduced by depreciation. In the event the total depreciation sustained by this taxpayer exceeds the earned surplus of the corporation in the year in question, the invested capital of the corporation may not be reduced by the amount of such excess.

The taxpayer also contends that the appreciation of its assets from 1909 to 1913, inclusive, more than equaled its sustained depreciation and that, therefore, its invested capital should not be reduced on account of depreciation allowed.

That unrealized appreciation may not be included in invested capital is no longer an open question. *La Belle Iron Works* v. *United States*, 256 U. S. 377.